1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7     HYDRO-BLOK USA LLC, et al.,

                    Plaintiffs,

8          v.

9     WEDI CORP.,                                    C15-671 TSZ

                    Defendant,

10         v.                                        ORDER

11    HYDROBLOK INTERNATIONAL
      LTD.,

12                  Counter-defendant.

13    WEDI CORP.,

                    Plaintiff,

14         v.

15    BRIAN WRIGHT, et al.,

                    Defendants.

16

17         THIS MATTER comes before the Court on a motion for summary judgment,

18    docket no. 176, brought by Brian Wright ("Wright"), Sound Product Sales L.L.C.

19    ("Sound Product"), Hydro-Blok USA LLC ("Hydro-Blok"), and Hydroblok International,

20    Ltd. ("H-International").  Having reviewed all papers filed in support of, and in

21    opposition to, the motion, including supplemental briefing permitted by a Minute Order

22    issued on February 6, 2019, docket no. 240, the Court enters the following Order.

23

ORDER - 1

**Background**

wedi Corp. ("wedi") is an Illinois corporation that distributes construction materials and sealants for use in bathroom systems, including showers. _See_ Am. Compl. at ¶ 1 (docket no. 17). From June 2008 until September 2014, Wright and/or Sound Product, in which Wright is the sole member, served as a sales agent for wedi within certain states, including Washington. _See_ Order at 2-3 (Case No. C18-636 TSZ, docket no. 72). H-International is a Canadian company of which Ken Koch is the sole proprietor. _Id._ at 3. In 2014, H-International and Hydro-Blok, in which Wright is the sole member, _id._ at 2-3, began distributing products that compete with the materials sold by wedi.

In December 2014, wedi accused Hydro-Blok of infringing United States Patent No. 5,961,900 (the "'900 Patent"), which discloses a method of manufacturing composite board. _See_ Ex. B to Compl. (Case No. C15-615 TSZ, docket no. 1-6). After an exchange of further correspondence on the subject, Hydro-Blok and H-International commenced action against wedi and its parent company, wedi GmbH, a German corporation, seeking a declaratory judgment of non-infringement as to the '900 Patent. _See_ Compl. & Am. Compl. (Case No. C15-615 TSZ, docket nos. 1 & 7). After wedi GmbH filed a declaration indicating that it has no ownership interest in and is not a licensee under the '900 Patent, Hydro-Blok and H-International dismissed their claims against wedi GmbH. _See_ Lohmann Decl. (Case No. C15-615 TSZ, docket no. 31-1); Notice of Voluntary Dismissal (Case No. C15-615 TSZ, docket no. 32). Similarly, after wedi represented in a declaration that it likewise does not own and is not a licensee under the '900 Patent,

Hydro-Blok and H-International indicated that they did not oppose wedi's motion to dismiss the declaratory judgment action, _see_ Plas.' Resp. (Case No. C15-615 TSZ, docket no. 50), and the Court dismissed Hydro-Blok's and H-International's complaint without prejudice. Order (Case No. C15-615 TSZ, docket no. 54).

Meanwhile, in April 2015, wedi had initiated this suit against Wright, Sound Product, and Hydro-Blok, asserting breach of contract and a variety of other claims. _See_ Compl. (docket no. 1). wedi made related allegations against H-International in counterclaims filed in the declaratory judgment action. _See_ Answer & Counterclaims (Case No. C15-615 TSZ, docket no. 19). In December 2015, the Court consolidated the declaratory judgment action into this matter. _See_ Order (docket no. 37). Wright, Sound Product, and Hydro-Blok eventually brought counterclaims against wedi for tortious interference with prospective economic advantage and abuse of process. Answer & Counterclaims (docket no. 50). wedi's motion for summary judgment, seeking to dismiss those counterclaims, was previously denied. Minute Order at ¶ 1 (docket no. 240).

Pursuant to agreements between wedi, Wright, and Sound Product, the parties were directed to arbitrate wedi's breach of contract, breach of fiduciary duty, civil conspiracy, and unjust enrichment claims against Wright and/or Sound Product. _See_ Order (docket no. 26). The parties also arbitrated wedi's allegation that Wright violated Washington's Uniform Trade Secrets Act ("WUTSA"), which had been pleaded as a counterclaim, but only against H-International. _See_ Am. Counterclaims at Count VII (docket no. 64). The arbitrator found against wedi and in favor of Wright and Sound Product on all claims other than breach of contract; on the contract claim, the arbitrator

awarded to wedi $1.00 in nominal damages. _See_ Order at 2 (docket no. 128); Order at 2 (docket no. 111); Award (docket no. 101-3). The Court confirmed the arbitral award, as modified by the Court, entered partial judgment in favor of wedi and against Wright on the breach of contract claim in the amount of $1.00, and dismissed with prejudice wedi's claims against Wright and/or Sound Product for breach of fiduciary duty, civil conspiracy, unjust enrichment, and violation of WUTSA. Orders (docket nos. 111 & 128); Judgment (docket no. 129). No party timely filed a notice of appeal.

Wright, Sound Product, Hydro-Blok, and H-International subsequently sought partial summary judgment, and the Court further narrowed the claims remaining for trial. In May 2018, wedi's counterclaims against H-International for aiding and abetting Wright in breaching a fiduciary duty, civil conspiracy, and violation of WUTSA were dismissed with prejudice. _See_ Order (docket no. 152). The claims and counterclaims asserted by wedi that are currently pending in this matter and that are the subject of the current motion for summary judgment, docket no. 176, are as follows:

| Claim or Counterclaim | Against |
|---|---|
| Tortious Interference with Contract | H-International |
| Lanham Act | Wright, Hydro-Blok, and H-International |
| Consumer Protection Act | Wright, Hydro-Blok, and H-International |
| Tortious Interference with Prospective Advantage | Wright, Hydro-Blok, and H-International |
| Abuse of Process | Wright, Hydro-Blok, and Sound Product |

Wright, Sound Product, Hydro-Blok, and H-International now seek summary judgment with regard to the balance of wedi's claims and counterclaims. Their earlier

motion for partial summary judgment also challenged wedi's tortious interference and abuse of process claims, but on different grounds than are raised in the motion now before the Court. _See_ Order at 6-7 (docket no. 152). The Court denied those portions of the previous motion because Wright, Hydro-Blok, and H-International had not shown how the arbitrator's decision preempted wedi's tortious interference claims, and because Wright, Sound Product, and Hydro-Blok had not established that the fact wedi's abuse of process claim was asserted in a "counter-counterclaim," which is not among the types of pleadings enumerated in Federal Rule of Civil Procedure 7(a), formed an appropriate basis for summary judgment. _Id._ In the instant motion, the movants contend they are entitled to summary judgment on the ground that wedi cannot, with respect to each of its remaining claims, prove one or more elements on which it will bear the burden of proof at trial. The Court agrees as to the abuse of process and false advertising claims, but not with regard to the tortious inference claims.

**Discussion**

**A.    Summary Judgment Standard**

The Court may grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be

believed" and from which all "justifiable inferences" are to be favorably drawn, *id.* at 255, 257, showing that a rational trier of fact could find for such party on matters as to which such party will bear the burden of proof at trial, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986); *see also Celotex*, 477 U.S. at 322.

**B.** **Abuse of Process**

In Washington, the elements of the tort known as "abuse of process" are as follows:  (i) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, (ii) an act in the use of legal process not proper in the regular prosecution of the proceedings, and (iii) harm proximately caused by the abuse of process.  *Bellevue Farm Owners Ass'n v. Stevens*, 198 Wn. App. 464, 477, 394 P.3d 1018 (2017).  The crucial inquiry is whether the judicial system's process, after having been made available to secure the presence of the opposing party, has been misused to achieve another, inappropriate end.  *See Mark v. Williams*, 45 Wn. App. 182, 192, 724 P.2d 428 (1986).  The mere institution of a legal proceeding, even with a malicious motive, does not constitute an abuse of process.  *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1232 (W.D. Wash. 2015).  Even the filing of a baseless or vexatious lawsuit is not misusing the process, and no liability attaches if nothing is done with the litigation "other than carrying it to its regular conclusion."  *Batten v. Abrams*, 28 Wn. App. 737, 749, 626 P.2d 984 (1981).

To prove its abuse of process claim, wedi must establish that each entity against which it asserts such claim engaged in an act, **after** using legal process, "to accomplish an end not within the purview of the suit."  *Vargas Ramirez*, 93 F. Supp. 3d at 1232; *see*

*also* *Batten*, 28 Wn. App. at 748 (the tort "goes to use of the process once it has been issued for an end for which it was not designed").  The acts about which wedi complains fall into two categories:  (i) conduct related to the declaratory judgment action; and (ii) the assertion of an abuse of process counterclaim against wedi.  With regard to the first basis, wedi attempts to lump "defendants" together, but the only entity against which wedi asserts its abuse of process claim that participated in the declaratory judgment action was Hydro-Blok.  As to Hydro-Blok, wedi offers four reasons for alleging abuse of process:  (i) Hydro-Blok brought the declaratory judgment action without knowing whether wedi or wedi GmbH owned the '900 Patent; (ii) Hydro-Blok failed to ask in discovery whether wedi or wedi GmbH owned the '900 Patent, instead requesting that they identify who has rights in the '900 Patent; (iii) Hydro-Blok declined to dismiss the suit in advance of motion practice in the absence of a covenant from wedi not to sue; and (iv) as a result, wedi had to engage in motion practice, including the filing of a reply brief.  *See* Pla.'s Resp. at 20 (docket no. 187).

Hydro-Blok undisputedly received a letter dated December 16, 2014, from wedi's counsel that read:

> wedi has been given reason to believe that . . . Hydro-Blok USA has begun offering for sale in the United States a composite board product made by a process that infringes **wedi's** United States Patent no. 5,961,900 . . . in violation of 35 U.S.C. § 271(g).

Ex. B to Compl. (Case No. C15-615 TSZ, docket no. 1-6) (emphasis added).  About a month later, on January 14, 2015, wedi's attorney told Hydro-Blok's lawyer:

> If your clients contend that they are not liable for infringing **wedi's** '900 patent, please respond by Friday of this week identifying (and explaining) the claim limitations of the '900 patent they contend are not

satisfied.  Please beware that **wedi is prepared to take all steps necessary to protect its patent rights** (e.g., file suit in federal court) if Hydro-Blok USA and Mr. Wright cannot show that the product at issue was made by a non-infringing process.

Ex. D to Compl. (Case No. C15-615 TSZ, docket no. 1-8) (emphasis added).  On April 3, 2015, wedi's counsel indicated:

> This firm has been **retained by wedi Corporation** . . . to institute litigation, if necessary, against Bright Wright, Hydro-Blok USA LLC . . . , Hydroblok International, Ltd. . . . , and possibly others, relating to the importation of, use, and offer to sell a composite wall board product . . . that is believed to infringe on **wedi's** United States Patent No. 5,961,900 . . . in violation of 35 U.S.C. § 271(g).

Ex. E to Compl. (Case No. C15-615 TSZ, docket no. 1-9) (emphasis added).  Given wedi's attorneys' repeated representations that wedi owned the '900 Patent and intended to take legal action to protect "its patent rights," Hydro-Blok was not, as a matter of law, required to independently investigate whether wedi owned or was a licensee under the '900 Patent before initiating the declaratory judgment action.  Moreover, in asking wedi and wedi GmbH to identify the owners or licensees of the '900 Patent, refusing to dismiss the declaratory judgment action in the absence of a covenant not to sue, and waiting until after wedi and wedi GmbH declared under oath that they did not own and were not licensees under the '900 Patent to forego the litigation, Hydro-Blok did not, as a matter of law, engage in acts "to accomplish an end not within the purview of the suit."  Rather, Hydro-Blok merely carried the litigation to "its regular conclusion," securing for itself some protection against wedi suing it in the future for infringement of the '900 Patent.

With regard to its second basis for asserting abuse of process, namely that Wright, Sound Product, and Hydro-Blok have themselves alleged abuse of process, wedi has not

described any act beyond the filing of a counterclaim that these parties have taken. Even if their abuse of process counterclaim is groundless, and even if they had a malicious motive for pursuing such counterclaim, wedi cannot, without proof of some form of extortive conduct on the part of Wright, Sound Product, and/or Hydro-Blok, respectively, establish an abuse of process claim. *See* *Batten*, 28 Wn. App. at 746 (indicating that the requisite "improper purpose" for an abuse of process claim "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself"). wedi has not presented the type of affirmative evidence necessary to withstand summary judgment, and wedi's abuse of process counter-counterclaim is DISMISSED with prejudice.

**C.      False Advertising (Lanham Act and CPA)**

The law of false advertising falls within the broader concept of unfair competition. *See* 44 AM. JUR. PROOF OF FACTS 3d 1 at § I.A.1. (1997). wedi asserts its false advertising claim against Wright, Hydro-Blok, and H-International under both federal and state law, *i.e.*, the Lanham Act and Washington's Consumer Protection Act, respectively. Under Section 43(a) of the Lanham Act,

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which--
>
> > . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).[1]  Pursuant to Washington's CPA,

> [u]nfair methods of competition and unfair or deceptive acts or practices in
> the conduct of any trade or commerce are . . . declared unlawful.

RCW 19.86.020.[2]

Wright, Hydro-Blok, and H-International contend that they are entitled to
summary judgment because wedi's Lanham Act and CPA claims are based on non-

---

[1] To establish liability under the Lanham Act, a plaintiff must prove that (1) the defendant made
a false statement of fact about its own or the plaintiff's product; (2) the statement was made in a
commercial advertisement or promotion; (3) the statement actually deceived or had the tendency
to deceive a substantial segment of its audience; (4) the deception was material; (5) the defendant
caused the statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be
injured as a result of the statement, either by diversion of sales from the plaintiff to the defendant
or a lessening of the plaintiff's goodwill.  *See* *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d
1038, 1052 (9th Cir. 2008).  "To demonstrate falsity within the meaning of the Lanham Act, a
plaintiff may show that the statement was literally false, either on its face or by necessary
implication, or that the statement was literally true but likely to mislead or confuse consumers."
*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

[2] To establish a violation of the CPA, a plaintiff must establish that (i) the defendant engaged in
an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business;
(iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to its
business or property; and (v) a causal relationship exists between such injury and the unfair or
deceptive act or practice.  *See* *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105
Wn.2d 778, 785-93, 719 P.2d 531 (1986).  Whether conduct constitutes an unfair or deceptive
act or practice within the meaning of the CPA constitutes a question of law.  *Robinson v. Avis
Rent A Car Sys., Inc.*, 106 Wn. App. 104, 114, 22 P.3d 818 (2001).  wedi does not accuse
Wright, Hydro-Blok, and/or H-International of any *per se* unfair or deceptive act or practice, and
thus, wedi must demonstrate that the acts or practices at issue are either unfair or deceptive under
the criteria developed in Washington jurisprudence.  *See* *Rush v. Blackburn*, 190 Wn. App. 945,
962-63, 361 P.3d 217 (2015).  A trade practice can be considered "unfair" if (i) it offends public
policy, although not the letter of the law, or falls within "the penumbra of some common-law,
statutory, or other established concept of unfairness"; (ii) it is "immoral, unethical, oppressive, or
unscrupulous"; and/or (iii) it causes substantial injury to consumers, competitors, or other
businesses.  *Id.*  An act can be "unfair" without being "deceptive."  *Id.* at 963.  Conduct is
"deceptive" if it involves a representation, omission, or practice that is "likely to mislead" a
reasonable person and has "the capacity to deceive a substantial portion of the public."  *Id.*

ORDER - 10

actionable puffery or on statements that are not demonstrably false. wedi's false

advertising claim is premised on the following statements:

    i.     "All HYDRO-BLOK™ products are IAPMO tested & certified"

    ii.     "Cutting of product is dust free and quick"

    iii.     "Environmentally friendly lightweight products with CFC-free XPS foam core"

    iv.     "100% WATERPROOF • HCFC-FREE XPS CLOSED-CELL FOAM CORE"

    v.     "What is HYDRO-BLOK? Put simply, it is the easiest, quickest and most user-friendly way to build a water-proof shower or tub surround at a price you can afford."

    vi.     "Introducing HYDRO-BLOK, the better, easier & more cost-effective way to build complete shower systems"

    vii.     "www.HydroBlok.com, we provide the most efficient, light-weighted [sic], 100% water-proof, tile-ready shower system, which can be installed within [sic] couple hours instead of days, by one person"

    viii.     "Speed and ease of installation for commercial applications can not [sic] be beat"

    ix.     "MODIFIED CEMENT COATING FOR MAXIMUM ADHESION OF TILE & STONE"

    x.     "When laid on a floor with your favourite tile or stone, it is commercially rated."

    xi.     "HYDRO-BLOK™ The BETTER Shower System"

*See* Ex. A to Anable Decl. (docket no. 177-1); Exs. 15 & 16 to Kanter Decl. (docket

nos. 195 & 196); Requests for Admission Nos. 44, 45, 70, & 71, Ex. 14 to Kanter Decl.

(docket no. 195) (referencing www.hydroblok.com). Most of these statements constitute

puffery, and the remaining statements are not demonstrably false or misleading

representations of fact.

### 1.   **Puffery**

Whether a statement is one of fact or mere puffery is a legal question that may be resolved on a dispositive motion.  *See Newcal Indus.*, 513 F.3d at 1053; *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). Puffery consists of generalized statements that do not make specific claims and that are unlikely to induce consumer reliance.  *See Newcal Indus.*, 513 F.3d at 1053; *see also Babb v. Regal Marine Indus., Inc.*, 2014 WL 690154 at *3 & n.4 (Wash. Ct. App. Feb. 20, 2014) (indicating that puffery is not actionable under the CPA), *remanded on other grounds*, 180 Wn.2d 1021, 329 P.3d 67 (2014).  Puffery has at least two forms: (i) exaggerated, blustering, and/or boastful statements on which no reasonable buyer would be justified in relying; and (ii) general claims of superiority over comparable products that are so vague they cannot be understood as anything more than mere opinions.  *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000).

Examples of the first type of puffery include (i) a lens manufacturer's touting that it uses "the most advanced equipment available," *see LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1498 (D. Minn. 1996); (ii) a cellular phone company bragging that it has "the best technology," *see Cook*, 911 F.2d at 246 (citing *Metro Mobile CTS, Inc. v. NewVector Commc'ns, Inc.*, 643 F. Supp. 1289 (D. Ariz.), *rev'd on other grounds*, 803 F.2d 724 (9th Cir. 1986)); (iii) a copier leasing company's promise to deliver "flexibility" in its "'cost-per-copy' contracts," as well as "lower copying costs," *Newcal Indus.*, 513 F.3d at 1052-53; and (iv) a razor seller's statement that its cartridges "have a

patented blade coating for incredible comfort," _Edmundson v. Procter & Gamble Co._, 537 Fed. App'x 708, 709 (9th Cir. 2013).  Within the second category of puffery are (i) slogans like Papa John's "Better Ingredients.  Better Pizza.," _Pizza Hut_, 227 F.3d at 499; and (ii) a debt collector's advertisement suggesting that, if "you pay for an attorney to do your collection work" and "find that you are doing all the 'leg work' for your lawyer," then "call us – we're the low cost commercial collection experts," _Cook_, 911 F.2d at 243, 246.

### a.    Exaggerated, Blustering, and/or Boastful Ads

In this matter, the statements that wedi has numbered ii, iii, ix, and x, _see_ Pla.'s Resp. at 2-3 (docket no. 187), are the kind of exaggerated, blustering, and/or boastful remarks constituting "puffery" on which a purchaser cannot reasonably rely.  The terms "dust free and quick," "environmentally friendly," "maximum adhesion," and "commercially rated" do not have the requisite specificity to be actionable under the Lanham Act or the CPA.  The process of cutting most materials produces some dust or debris and takes some time, and the phrase "dust free and quick" must be understood as a relative description.[3]  Similarly, "environmentally friendly" implies a comparison, as

---

[3] In support of its contention that cutting HYDRO-BLOK™ produces dust, wedi cited (i) a Safety Data Sheet for Polyfoam - Extruded Polystyrene Foam ("XPS"), Ex. 37 to Kanter Decl. (docket no. 197); (ii) a YouTube link, _see_ Kanter Decl. at ¶ 13 (docket no. 194); and (iii) the declarations of Ian Guiberson, docket no. 190, and Herbert Oxenrider, docket no. 188, which have both been stricken, _see_ Minute Order at ¶ 3 (docket no. 240).  The XPS Safety Data Sheet does not itself establish that cutting HYDRO-BLOK™ generates dust, but rather indicates that "[d]ust particles from cutting [XPS] are unlikely to be of inhalable dimensions unless power tools are used." Ex. 37 to Kanter Decl. (docket no. 197).  One of the advantages touted about HYDRO-BLOK™ is that it can be "easily cut" with a utility knife or hand saw, _see_ Ex. A to Anable Decl. (docket no. 177-1), instead of a power tool, and thus, the "dust free" claim is entirely consistent with the

opposed to a promise to have no negative impact on the ecosystem. Finally, contrary to

wedi's contention, "maximum adhesion" and "commercially rated" are not characteristics

that can be measured or tested, and therefore, do not support a false advertising claim.[4]

*Compare* *Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302, 308-09

(N.D. Ill. 1965) (distinguishing between the statements "far brighter than any lamp ever

before offered for home movies" and "the beam floods an area greater than the coverage

of the widest wide angle lens," which both constitute puffery, and the promises of

"35,000 candlepower" and a "10-hour life," which could give rise to liability if untrue).

---

XPS Safety Data Sheet. The Court has not considered the YouTube video, which was cited as "available," but not properly made part of the record in this matter.

[4] According to wedi, the term "commercially rated" is understood within the industry to mean that the product has been tested using American Society for Testing and Materials ("ASTM") method C627 (the "Robinson Floor Test"). *See* Lohmann Decl. at ¶ 5 (docket no. 187-1). H-International has admitted that HYDRO-BLOK products have never been tested using ASTM C627. *See* Request for Admission No. 118, Ex. 14 to Kanter Decl. (docket no. 195). The advertising statement at issue, however, makes no assertion that HYDRO-BLOK products have passed ASTM C627 or that they have withstood a particular number of cycles of the test, and it does not include the quantified rating language adopted by the Tile Council of North America ("TCNA"), namely "light" (passes cycles 1-6), "moderate" (passes cycles 1-10), "heavy" (passes cycles 1-12), or "extra heavy" (passes cycles 1-14) commercial use. *See* Bill Griese, *Here's to you, Mr. Robinson*, TILE MAGAZINE 32, 34 (July/Aug. 2009) (https://www. tcnatile.com/images/pdfs/Here's%20to%20you,%20Mr.%20Robinson.pdf); *see also* Lohmann Decl. at ¶ 6 (docket no. 187-1) (indicating that the TCNA might now have seven categories of commercial ratings, but providing no further details). wedi has offered no evidence that a purchaser versed in the relevant terminology would be misled by the general verbiage "commercially rated," as opposed to specific warranties like those contained in competitors' information sheets, for example: (i) "ASTM C-627 Residential & Light Commercial," FinPan ProPanel® Installation Details, Ex. 4 to Kanter Decl. (docket no. 195 at 39); (ii) "ASTM C627 RATED EXTRA HEAVY," Laticrete HYDRO BAN Sheet Membrane, Ex. 4 to Kanter Decl. (docket no. 195 at 42); and (iii) "Passes cycles 1-6 | C627 | Residential," USG Durock™ Brand UltraLight Foam Tile Backerboard Submittal Sheet, Ex. 4 to Kanter Decl. (docket no. 195 at 54).

### b.    General Claims of Superiority

The statements enumerated by wedi as v, vi, vii, viii, and ix, *see* Pla.'s Resp. at 2-3 (docket no. 187), are non-actionable opinions of superiority over comparable products. These statements describe HYDRO-BLOK™ as the easier/easiest, quicker/quickest, more cost-effective, most user-friendly, most efficient, or better product.  Such vague and general comments fall squarely within the definition of "puffery."  wedi does not contend that specific comparisons were made to wedi's products, their components, or their performance, and it has offered no evidence that might transform these general opinions into quantifiably false or misleading statements of fact.  *Compare Pizza Hut*, 227 F.3d at 500-01 (concluding that, because ads compared specific ingredients used by Papa John's with ingredients used by its competitors, while the evidence established that Papa John's and Pizza Hut's sauces and doughs had no demonstrable differences, the record supported the jury's finding that the related slogan "Better Ingredients.  Better Pizza." was misleading).

### 2.    Falsity

wedi alleges that the statements "All HYDRO-BLOK™ products are IAPMO tested & certified" and "HCFC-FREE XPS" are both literally false.  wedi's accusations lack merit.

### a.    IAPMO Certification

The International Association of Plumbing and Mechanical Officials ("IAPMO") issued a Certificate of Listing for HYDRO-BLOK tileable shower receptors and shower kits for the following years:  (i) March 2015 – March 2016, Ex. B to Anable Decl.

(docket no. 177-2); (ii) March 2016 – March 2017, Ex. C to Anable Decl. (docket no. 177-3); (iii) March 2017 – March 2018, Ex. D to Anable Decl. (docket no. 177-4); and (iv) March 2018 – March 2019, Ex. E to Anable Decl. (docket no. 177-5).[5] Each Certificate of Listing indicates that IAPMO Research and Testing, Inc. ("IAPMO R&T") is a product certification body, which

> tests and inspects samples taken from the supplier's stock or from the market or a combination of both to verify compliance to the requirements of applicable codes and standards. This activity is coupled with periodic surveillance of the supplier's factory and warehouses as well as the assessment of the supplier's Quality Assurance System.

Exs. B-E to Anable Decl. (docket nos. 177-2 – 177-5). Thus, wedi cannot show that, from March 2015 until March 2019, the representation that "HYDRO-BLOK™ products are IAPMO tested & certified" was literally false.

wedi contends, however, that the "IAPMO tested & certified" slogan was used prematurely, before March 2015, as well as in a misleading fashion throughout the four-year period at issue because the product changed after it was tested by IAPMO R&T in 2014. With regard to the first argument, the undisputed evidence establishes that, although a brochure posted on the website on January 12, 2015, mentioned IAPMO certification before such status was official, the reference was removed from the brochure and the website by January 22, 2015, in advance of any HYDRO-BLOK products landing

---

[5] wedi appears to raise an evidentiary objection to the Certificates of Listing, arguing that they constitute hearsay and cannot be used against wedi because wedi has not manifested that it has adopted them. *See* Pla.'s Supp. Resp. at 3 n.4 (docket no. 242) (citing Fed. R. Evid. 801(d)(2) & 802). The Certificates of Listing, however, fall within at least two exceptions to the rule against hearsay, namely as business records and as market reports "generally relied on by the public or by persons in particular occupations." *See* Fed. R. Evid. 803(6) & (17).

in the United States (from China) and being available for sale. *See* Ex. D to Koch Decl. (docket no. 252-4); *see also* Ex. B to Anable Decl. (docket no. 205-2 at 4) (indicating that HYDRO-BLOK products were first offered for sale in February 2015 and were first imported and sold in May 2015); Koch Dep. at 159:20-25, Ex. 1 to Kanter Decl. (docket no. 243-1). Thus, wedi cannot, for purposes of its false advertising claims, establish the requisite deception of or tendency to deceive purchasers, or any diversion of sales or other injury, associated with announcing IAPMO certification too soon. *See supra* notes 1 & 2.

As to wedi's assertion that IAPMO certification was either obtained or maintained improperly, wedi has not offered the type of evidence necessary to prove such claim. The Listing Agreement between IAPMO R&T and H-International ("Listee") indicates that

> Listee shall make no substantial change in material, manufacturing process, marking or design of the product without prior written approval of the Product Certification Committee . . . . [T]he term "substantial change" means any change which would make any of the information set forth on the Certificate of Listing or the Classified Marking License for the product false or misleading (or which would reasonably be deemed to cause the product to fail to conform to the applicable standard(s) for the product and/or the applicable code(s) set forth in the Certificate of Listing, or to fail to conform to the applicable standard(s) for the product set forth in the Classified Marking License).

Listing Agr. at ¶ 14, Ex. 24 to Kanter Decl. (docket no. 196). Although wedi has provided evidence that the manufacturer of HYDRO-BLOK products experienced certain quality control issues and made some adjustments by employing different equipment and/or components, wedi has offered no proof that any modifications resulted in a "substantial change" within the meaning of the Listing Agreement, and has failed to

explain how reasonable jurors could find the requisite "substantial change" in the absence of expert testimony to assist them. In contrast, Ken Koch has testified that no changes have been made to the manufacturing process or materials since the production run in 2014 that generated the samples sent to IAPMO R&T for testing and certification. _See_ Koch Dep. at 307:14-309:12, Ex. A to Denkenberger Decl. (docket no. 250-1); _see also_ Koch Dep. at 291:8-12, Ex. 1 to Kanter Decl. (docket no. 243-1).

wedi attempts to counter Koch's representation about the lack of any material modification to the product by pointing out that IAPMO R&T's testing was performed in February and March 2014, _see_ Ex. A to Koch Decl. (docket no. 252-1), and March through June 2014, _see_ Ex. 7 to Kanter Decl. (docket no. 243-7), but the product was first manufactured in March 2015, Ex. B to Anable Decl. (docket no. 205-2 at 4). wedi's argument is non-sensical. IAPMO certification was required before the product could be placed on the market and, by definition, all testing had to precede commercial production. wedi provides no authority to support the proposition that a prototype could not serve as an appropriate sample for testing.

wedi also tries to cast doubt on Koch's veracity by asserting that the product tested by IAPMO R&T had a blue core, while the HYDRO-BLOK products generally have green cores. wedi cites to a photograph, taken against a blue background, that was included in an unsigned, undated, draft report. _See_ Fig. 1, on the next page. The draft report does not mention the color of any items that were tested, and wedi offers no evidence that the photograph accurately reflects the color of the core, no evidence that the

core of the sample was not in fact green, and no evidence that the color of the core was

material to its performance or ability to satisfy the applicable standards and codes.



Fig. 1: from China IAPMO R&T Lab - Test Data Sheet (draft), Ex. 7 to Kanter Supp. Decl. (docket no. 243-7).

HYDRO-BLOK™ brochures currently indicate that the product is tested and

certified by ICC Evaluation Service, a subsidiary of the International Code Council. *See*

Ex. B to Fogarty Decl. (docket no. 244-2). The brochures no longer refer to IAPMO.

*See* Koch Dep. at 294:25-295:17, Ex. A to Denkenberger Decl. (docket no. 250-1). wedi,

however, raises the same complaint about ICC certification that it made about IAPMO

certification, arguing that, because ICC Evaluation Service did not independently test the

HYDRO-BLOK products, but instead relied on IAPMO R&T's reports, *see* Koch Dep. at

299:25-301:5, Ex. 1 to Kanter Decl. (docket no. 243-1), the certification does not relate to

products currently on the market, and any statements about ICC certification are literally

false. For the reasons outlined earlier, wedi's allegation of literal falsity lacks merit, as

does any suggestion that a representation about a certification actually issued is somehow misleading. wedi's dissatisfaction with the process for certifying HYDRO-BLOK products is more appropriately raised with ICC Evaluation Service or the ICC. _See_ Ex. B to Denkenberger Decl. (docket no. 250-2 at 5) (email from ICC Evaluation Service's Director of Standards, who used to work for IAPMO, indicating that the procedure for challenging a certification is to submit a complaint to the product review committee and provide data showing that the product being produced is not the same as the product that was tested). wedi's challenge to the method by which certification was granted does not form a basis for a false advertising claim under the Lanham Act or the CPA.

### b. __HCFC-FREE XPS__

wedi relies on three documents as support for the allegation that "HCFC-FREE XPS" is literally false, namely (i) the Safety Data Sheet from FUDA Thermal Insulation Material Co., Ltd. concerning Extruded Polystyrene Foam ("XPS"), Ex. 37 to Kanter Decl. (docket no. 197); (ii) an email from Ken Koch indicating that the HYDRO-BLOK products contain HBCD, a fire-retardant banned in Canada, but not in the United States, Ex. 39 to Kanter Decl. (docket no. 197); and (iii) a test report from SGS Hong Kong Ltd. ("SGS"), which was summarized in the transmittal email as reflecting that the foam used in HYDRO-BLOK products is "CFC and HCFC free," Ex. 38 to Kanter Decl. (docket no. 198). The first two items do not concern HCFC, which wedi has not defined other than to associate it with the depletion of the Earth's ozone layer. _See_ Pla.'s Resp. at 4-5 (docket no. 187). The acronym HCFC presumably stands for hydrochlorofluorocarbons, which (as the term suggests) are substances composed of hydrogen, chlorine, fluorine,

and carbon.  HBCD or hexabromocyclododecane, on the other hand, contains bromine and no chlorine or fluorine, and it is not an HCFC.  Thus, the presence of HBCD in the HYDRO-BLOK product does not make the statement "HCFC-FREE XPS" false or misleading, and wedi has not identified any representation concerning HBCD that might form the basis of a false advertising claim.

The third exhibit on which wedi relies, the SGS Test Report dated September 23, 2015, Ex. 38 to Kanter Decl. (docket no. 197), does not bolster, but rather undermines wedi's accusation that "HCFC-FREE" is a false description of the XPS incorporated in HYDRO-BLOK products.  In the Result Summary portion of the Test Report, next to the phrase "Ozone Depleting Substances," the conclusion set forth is "--."  _Id._ (docket no. 197 at 42).  Of the 62 chlorofluorocarbons ("CFCs") and HCFCs for which tests were performed, SGS reported results of "not detected" for all but two compounds, namely HCFC-22, which had a level of 1.0 μg/g, and HCFC-142b, which had a level of 7.3 μg/g.  _Id._ (docket no. 197 at 43).  Although these levels are above the detection limit of 0.1 μg/g, they are nominal amounts, and SGS's conclusion that the XPS at issue had "--" ozone-depleting substances indicates that the material is essentially "HCFC-free."  Moreover, the Safety Data Sheet submitted by wedi, and on which Hydro-Blok and H-International undisputedly could rely, states that FUDA's XPS is "free of HCFC blowing agents and complies with EU Regulation EC/1005/2009," regarding substances that deplete the ozone layer.  Ex. 37 to Kanter Decl. (docket no. 197 at 36).

The Court concludes that wedi cannot, as a matter of law, establish a prima facie case of false advertising, and its Lanham Act and CPA claims are DISMISSED with

prejudice. In light of this ruling, the Court need not address whether the CPA claim also fails for lack of evidence of public interest, causation, and/or injury.

**D.** **Tortious Interference**

To establish tortious interference with a contractual relationship or business expectancy, a plaintiff must prove: (i) the existence of a valid contractual relationship or business expectancy; (ii) the defendant's knowledge of that relationship; (iii) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (iv) the defendant's interference had an improper purpose or used an improper means; and (v) resultant damage. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). Wright, Hydro-Blok, and H-International previously moved for summary judgment, on the basis of collateral estoppel (also known as issue preclusion), as to wedi's tortious interference with contract claim against H-International and wedi's tortious interference with prospective economic advantage claim against all three entities, but they failed to show "with clarity and certainty" how the arbitrator's decision concerning wedi's breach of contract, breach of fiduciary duty, civil conspiracy, unjust enrichment, and WUTSA claims against Wright and/or Sound Product preempted wedi's tortious interference claims. *See* Order at 6 (docket no. 152). In the current motion for summary judgment, the moving parties again attempt to rely on the arbitral award as a basis for dismissing wedi's tortious interference claims. The Court remains unpersuaded that the arbitrator's findings preclude wedi from pursuing its tortious interference claims.

Wright undisputedly shared with Koch (H-International) certain confidential information he acquired while serving as a sales agent for wedi, including financial data and customer lists.  _See_ Exs. 2-6 & 8-9 to Kanter Decl. (docket no. 195).  wedi alleges that, in doing so, Wright, along with Hydro-Blok and H-International, used "improper means" to interfere with wedi's contractual relationships or business expectancies, resulting in damage to wedi.  In a supplemental response filed at the Court's direction, wedi identifies the following items of damage:  (i) the loss of customers; (ii) $40,000 in rebates that wedi has issued to one of its distributors; (iii) Wright's, Hydro-Blok's, and H-International's improper acquisition from wedi of a Hilton "lead" list worth $5,000; (iv) Wright's, Hydro-Blok's, and H-International's improper acquisition from wedi of legal advice, for which wedi paid $1,500, concerning the potential liability of independent contractors; and (v) injury to reputation or goodwill.[6]  _See_ Pla.'s Supp. Resp. at 9-10 (docket no. 242); _see also_ Lohmann Decl. at ¶¶ 9-11, 15-16 (docket no. 187-1).  The Court concludes that wedi has presented triable issues relating to its tortious interference claims and that, as a result, summary judgment cannot be granted.

---

[6] _See Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc._, 178 Wn. App. 702, 714 & n.2, 315 P.3d 1143 (2013) (on a tortious interference claim, corporations may recover for injury to reputation, but not emotional distress); _see also Experience Hendrix, L.L.C. v. HendrixLicensing.com, Ltd._, 2011 WL 4402775 at *5 (W.D. Wash. Sep. 21, 2011) (under Washington law, business reputation and goodwill are synonymous), _rev'd in part on other grounds_, 762 F.3d 829 (9th Cir. 2014).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     The motion for summary judgment, docket no. 176, brought by Wright, Sound Product, Hydro-Blok, and H-International is GRANTED in part and DENIED in part as follows:  (i) the motion is GRANTED as to wedi's abuse of process, Lanham Act, and CPA claims, counterclaims, and/or counter-counterclaims, which are DISMISSED with prejudice; and (ii) the motion is otherwise DENIED.  The matters remaining for trial are summarized below:

| Claim and/or Counterclaim | Asserted By | Against |
|---|---|---|
| Tortious Interference with Contract | wedi | H-International |
| Tortious Interference with Prospective Advantage | wedi | Wright, Hydro-Blok, and H-International |
| Tortious Interference with Prospective Advantage | Wright, Hydro-Blok, and Sound Product | wedi |
| Abuse of Process | Wright, Hydro-Blok, and Sound Product | wedi |

(2)     The parties are DIRECTED to file a Joint Status Report within fourteen (14) days of the date of this Order setting forth a proposed trial date and any scheduling conflicts within the three-month period surrounding such date.

(3)     The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

1    IT IS SO ORDERED.

2    Dated this 18th day of June, 2019.

3

4    _____
     Thomas S. Zilly

5    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23